IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:11-cv-80813-KMM

MICROSPHERIX LLC,

    Plaintiff,

vs.

BIOCOMPATIBLES, INC.,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE

THIS CAUSE came before the Court upon Defendant's Motion to Transfer Venue (ECF No. 33). Plaintiff filed a Response (ECF No. 39), and Defendant filed a Reply (ECF Nos. 41, 43-1). The Motion is now ripe for review. UPON CONSIDERATION of the Motion, the Response and Reply, the pertinent portions of the Record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND[1]

The Motion to Transfer Venue currently before the Court arises within the context of a civil action for patent infringement. The patent in question, United States Patent No. 7,776,310 ("the '310 patent"), covers a new type of brachytherapy "seed," or strand of seeds. Brachytherapy is a form of radiation therapy. Contrary to conventional forms of radiation therapy, where radiation is delivered to the body via external projection, brachytherapy utilizes small seeds that are implanted in the diseased tissue. The radiation is therefore localized to the diseased area, and healthy tissue is not unnecessarily damaged. The '310 patent details a new

---

[1] The facts herein are taken from Defendant's Motion to Transfer Venue; Plaintiff's Response; and Defendant's Reply.

1

brachytherapy strand of seeds that is elastic, flexible, and biodegradable. The strand is preferable to existing treatment options because it can "provide higher and more consistent concentrations of a therapeutically active substance to a target tissue," while at the same time eliminating the need for multiple seed injections. Pl.'s Resp. Ex. A, at 14 (ECF No. 34-1). The strand may also be implanted in areas of the body traditionally unreceptive to existing brachytherapy seeds.

Plaintiff Microspherix LLC ("Microspherix ") is a Florida corporation with its principal place of business in Boca Raton, Florida. Microspherix was assigned the right, title, and interest in the '310 patent by Dr. Edward Kaplan—the inventor of the '310 patent, owner of Microspherix, and founder of 1st Line Oncology, a cancer treatment center. Defendant Biocompatibles, Inc. ("Biocompatibles") is a Delaware Corporation with its principle place of business in Oxford, Connecticut. Biocompatiles, through its BrachySciences division, develops and manufactures brachytherapy devices for the treatment of prostate cancer. Biocompatibles acquired its "AnchorSeed" technology and the BrachSciences trading name from Gary A. Lamoureux, founder of BrachSciences, Inc. ("BSI"), and World Wide Medical Technologies, Inc. ("World Wide").

On July 14, 2011 Microspherix commenced the instant action against Biocompatibles. Microspherix's Amended Complaint alleges that Biocompatibles' "AnchorSeed" product infringes Microspherix's '310 patent. Biocompatibles now seeks to transfer the action to the District of Connecticut.

## II. LEGAL STANDARD

Title 28 U.S.C. § 1404(a) provides that "for the convenience of the parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district or

division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (as amended by The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 204, 125 Stat. 758, 764). The standard for transfer under § 1404(a) gives broad discretion to the trial court, and a trial court's decision will be overturned only for abuse of discretion. Mason v. SmithKline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1358 (S.D. Fla. 2001) (citing Brown v. Ct. Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991) (holding that the trial court did not abuse its discretion in transferring a case that would impose financial hardship on a party no matter where it was heard)).

The question of whether to transfer venue involves a two-pronged inquiry. Mason, 146 F. Supp. 2d at 1359. The first prong holds that the alternative venue "must be one in which the action could originally have been brought by the plaintiff." Id.[2] The second prong requires Courts to "balance private and public factors" to determine whether or not transfer is justified. Id.; see also 28 U.S.C. § 1404(a). "Defendants moving for transfer have a heightened burden as they must prove with particularity the inconvenience caused by the plaintiff's choice of forum." Mason, 146 F. Supp. 2d at 1359 (citing McEvily v. Sunbeam-Oster Co., 878 F. Supp. 337, 345 (D.R.I. 1994)). Consequently, transfer will only be granted where the balance of convenience of

---

[2] On December 7, 2011, The Federal Courts Jurisdiction and Venue Clarification Act of 2011 was signed into law, and on January 6, 2012 the law took effect. The new law amends 28 U.S.C. § 1404(a) by inserting the words "or to any district or division to which all parties have consented" at the end of the last sentence of § 1404(a). Pub. L. No. 112-63, § 204, 125 Stat. 758, 764 (2011). The amendment thus permits district courts to transfer a civil action not only to a venue where the action could have been originally brought by the plaintiff, but also to a venue to which all parties have consented. The question of whether to transfer venue is still a two-pronged inquiry, but the first prong is now disjunctive. Thus, the alternative venue must be one in which the action could originally have been brought by the plaintiff *or* one to which all parties have consented. The second prong requires Courts to balance private and public factors to determine whether or not transfer is justified. As the Act only applies to actions commenced on or after January 6, 2012, the amendment is inapplicable to the instant case.

3

the parties "strongly favors" the defendant. Id. (citing Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996)).

## III. ANALYSIS

This Court first takes up an analysis of each prong, before considering the relevance of the forum-selection clause disputed by the parties.

### A. "Originally Brought"

Title 28 U.S.C. § 1338(a) grants district courts original jurisdiction "of any civil action arising under any Act of Congress relating to [a] patent." In such actions venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). BioCompatibles' principle place of business is in Oxford, Connecticut and it is uncontested that BioCompatibles resides in the District of Connecticut. See 28 U.S.C. § 1404(a) (as amended by The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 202, 125 Stat. 758, 764) ("For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . ."). Thus, Plaintiff could have filed the instant civil action in the District of Connecticut, and therefore transfer is permissible—provided that transfer is justified as evinced by an analysis of public and private factors.

### B. Public and Private Factors

In Manuel v. Convergys Corp., 430 F.3d 1132 (11th Cir. 2005), the Eleventh Circuit listed a number of public and private factors relevant to determine whether or not transfer is justified under § 1404(a). These factors include:

4

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances

Id. at 1135 n.1. No single factor is dispositive, and courts have differed in the weight afforded to each individual factor. Compare Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp., 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (evaluating six factors), with Trace-Wilco, Inc. v. Symantec Corp., No. 08-80877-CIV, 2009 WL 455432, at *2 (S.D. Fla. Feb. 23, 2009) (evaluating nine factors), and NISSM Corp. v. Time Warner, Inc., No. 07-20624-CIV, 2008 WL 540758, at *2 (S.D. Fla. Feb. 25, 2008) (evaluating seven factors). As several factors ostensibly overlap with one another, this Court will strive to analyze each factor in a manner most tailored to the instant dispute.

### 1. The Convenience of the Witnesses

In assessing the convenience of the witnesses, the mere length of an individual parties' list of potential witnesses is not of great significance. See Cellularvision, 508 F. Supp. 2d at 1190; see also Trace-Wilco, Inc., 2009 WL 455432, at *3 ("'[A] court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum.'" (quoting Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006))). Rather, the witnesses' actual knowledge relative to the instant dispute, and the location and convenience of the witnesses are important considerations when evaluating whether transfer is justified. Cellularvision, 508 F. Supp. 2d at 1190.

Here, Biocompatibles argues that the "vast majority" of potential witnesses are located in Oxford, Connecticut. Aff. of Bruce Strawinski, at ¶ 12 (ECF No. 33-1). According to

5

Biocompatibles, these witnesses are anticipated to testify to the research, development, manufacture, marketing, and sales of Biocompatibles AnchorSeed line of products. Approximately half of Microspherix's witnesses reside in Oxford, Connecticut, and all are anticipated to provide testimony regarding the licensing negotiations that took place between WorldWide and Microspherix. While Microspherix has stipulated to deposing all of Biocompatibles witnesses in Connecticut, the vast majority of witnesses in the instant case would nevertheless be inconvenienced as they would still have to travel nearly 1300 miles for trial. The balance of convenience of the witnesses thus tips in favor of transferring the action.

### 2. The Location of Relevant Documents

In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant. In light of the burden a party moving for transfer bears, absent a showing by the moving party to the contrary, this Court considers the location of relevant documents and the relative ease of access to sources of proof a non-factor. Though Biocompatibles argues that most relevant documents and other physical evidence are located in Oxford, Connecticut, Biocompatibles has not alleged that any of these sources of proof are incapable of being transmitted or shipped to Miami. Consequently, the location of relevant documents and the relative ease of access to sources of proof is neutral with respect to whether transfer is justified.

### 3. The Convenience of the Parties

Sadly, from the parties' briefs, it appears that no matter where this action is resolved, cancer patients will be adversely affected. Compare Def.'s Mot. to Transfer, at 8 (ECF No. 33) ("The prolonged absence of key individuals to a distant site would significantly disrupt its daily operations, not only to the detriment of its business but also . . . to that of the hospitals and

6

clinics it serves, as well as the cancer patients who rely upon BrachySciences' products."), with Pl.'s Resp., at 19 (ECF No. 34) ("[T]ransfer of this matter to the District of Connecticut would adversely affect the interests of Dr. Kaplan's cancer patients who are residents of the Southern District of Florida.").[3] At the risk of trivializing such serious claims, this Court evaluates the convenience of the forum to the parties.

Biocompatibles argues that transfer to the District of Connecticut is appropriate because its BrachySciences division has forty-four employees, and any event in Miami—such as a deposition or a trial—that necessitates the appearance of multiple employees could disrupt its just-in-time manufacturing capability. Biocompatibles also contends that it would incur substantial travel and accommodation expenses were its employees required to travel to Miami. These concerns, however, are mitigated by several factors. First, Biocompatibles' witnesses with the most relevant information relating to the instant dispute have attended numerous trade shows and conferences located outside of Oxford, Connecticut, with no apparent disruption to Biocompatibles' daily operations. Second, Microspherix has stipulated to deposing all of Biocompatibles' witnesses in Connecticut. Though Biocompatibles would certainly incur substantial travel and accommodation expenses were its employees required to travel to Miami for trial, this Court hardly believes that the absence of select personnel for trial would be so significant as to cause a material disruption in the daily operations of a corporation with as many employees as Biocompatibles. The temporary personnel loss necessitated by a trial is one of the more predictable and easily managed risks a corporation as large as Biocompatibles faces.

---

[3] In Biocompatibles' Reply Brief, Biocompatibles adds that any disruption to its daily operations "could have detrimental repercussions for . . . Dr. Kaplan's 1st Line Oncology clinic and patients." Def.'s Reply, at 9 (ECF No. 41).

7

Thus, while Biocompatibles would be inconvenienced by a trial in Miami, Dr. Kaplan, the owner of Microspherix and sole inventor of the '310 patent, would be far more inconvenienced. Dr. Kaplan personally treats approximately thirty-five cancer patients per day. Dr. Kaplan's extended absence due to his attendance at a trial in Connecticut would adversely affect the quality of care his cancer patients receive.[4] Consequently, the convenience of the parties weighs against transferring the action.

### 4. The Locus of Operative Facts

"In patent infringement actions, the preferred forum is 'that which is the center of gravity of the accused activity.'" Trace-Wilco, Inc., 2009 WL 455432, at *2 (quoting Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 482 n.17 (D.N.J. 1993) (quoting S.C. Johnson & Son, Inc., v. Gillette Co., 571 F. Supp. 1185, 1188 (N.D. Ill. 1983))). The center of gravity is generally where the operative facts underlying the cause of action occurred. Several courts have held this to be the location where the allegedly infringing product was designed and manufactured, and from where marketing and sales decisions are made. See Trace-Wilco, Inc., 2009 WL 455432, at *2; see also Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005). Biocompatibles argues that the center of gravity in the instant matter is Oxford, Connecticut, as Oxford is where Biocompatibles is headquartered and where Biocompatibles designed, and continues to manufacture, its AnchorSeed technology. To the extent that the Amended

---

[4] Microspherix argues that the attendance of Biocompatibles' employees at trade shows outside of Oxford, Connecticut, make Biocompatibles' claims that the Southern District of Florida is an inconvenient forum less likely. To support this claim, Dr. Kaplan states that he has "attended numerous conferences and trade shows . . . in cities outside of Connecticut at which [Biocompatibles witnesses] were attendees." Pl.'s Resp. Ex. B, at ¶ 15 (ECF No. 34-2). The unintended bidirectional nature of Dr. Kaplan's testimony is not lost on this Court. The intensely individualized nature of Dr. Kaplan's care for his patients, however, leads this Court to believe that Microspherix and Dr. Kaplan would nevertheless be more inconvenienced were the instant matter transferred than Biocompatibles would be were the matter to remain in the Southern District of Florida.

8

Complaint filed by Microspherix alleges infringement, Oxford is certainly the center of gravity of the instant matter. To the extent that the Amended Complaint alleges *willful* infringement, however, a number of operative facts exist only as a result of Biocompatibles alleged activity in the Southern District of Florida. Specifically, Microspherix claims that

> Microspherix and Biocompatibles held licensing negotiations in Florida regarding a potential license that would have included the '310 patent, but Biocompatibles chose to terminate the negotiations without entering into a license agreement. Despite knowledge of Microspherix's patent rights and their applicability to the accused products, Biocompatibles continued its infringement of the '310 patent. On information and belief, such infringement has been and is willful.

Am. Compl., at ¶ 18 (ECF No. 11). Moreover, of the twelve witnesses listed in Microspherix's initial disclosures, seven are Biocompatibles' employees who are anticipated to testify regarding "licensing negotiations with Microspherix" which were held in the Southern District of Florida. Pl.'s Initial Disclosures, Ex. C, at 3 (ECF No. 33-3). As a result, the operative facts in the instant matter arise from activities in both Connecticut and Florida, and the factor is at best neutral with respect to whether transfer is justified.

### 5. Availability of Process

Biocompatibles identifies only one specific non-party witness—Gary A. Lamoureux—who is not subject to the subpoena power of the Southern District of Florida. There is no indication that Mr. Lamoureux is actually unwilling to testify, and as the former owner of BrachySciences, World Wide, and a former chairman of Biocompatibles, this Court has no reason to believe Mr. Lamoureux will not be available to testify. Should Mr. Lamoureux become unavailable to testify, however, he is subject to compulsory process in the District of Connecticut and both parties will have ample opportunity to depose him. Consequently, the existence of one *potential* witness who is not subject to the subpoena power of the Southern

District of Florida makes the availability of process factor at best neutral with respect to whether transfer is justified.

### 6. The Relative Means of the Parties

Biocompatibles is a wholly-owned subsidiary of Biocompatibles UK Ltd., which in turn is a subsidiary of BTG International Ltd., a publicly traded company on the London Stock Exchange. Biocompatibles' BrachySciences division has forty-four employees. Microspherix is owned by Dr. Kaplan, who is also the Chief Executive Officer. Not much else is known regarding the parties' financial means and their respective abilities to conduct litigation in a distant forum. As a result, the factor is neutral with respect to whether transfer is justified.

### 7. A Forum's Familiarity with the Governing Law

As the instant action arises under the laws of the United States, this Court presumes that the District of Connecticut is familiar with patent law. The factor is thus neutral with respect to whether transfer is justified.

### 8. The Weight Accorded a Plaintiff's Choice of Forum

"'The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'" Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. Unit B 1981)). Biocompatibles argues, however, that where the center of gravity of a dispute is located in a different forum, the plaintiff's choice of forum is entitled to less deference. See Trace-Wilco, Inc., 2009 WL 455432, at *2 ("[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to 'less consideration.'"); see also Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005); Balloveras v. Purdue Pharma Co., No. 04–20360–CIV, 2004 WL 1202854, *1 (S.D. Fla. 2004); Windmere

10

Corp. v. Remington Prods., Inc., 617 F. Supp. 8, 10 (S.D. Fla. 1985). Not only is Microspherix a Florida corporation having a principal place of business in the Southern District of Florida, but this Court has already examined the operative facts in the instant matter and has concluded that the facts arise from activities in both Connecticut and Florida. Consequently, this Court has a strong interest in adjudicating the instant dispute, and the deference accorded to Plaintiff's choice of forum weighs against transferring the action.

### 9. Trial Efficiency and the Interests of Justice

The instant case is currently set for trial commencing the two-week trial period of August 13, 2012. This Court finds that transferring this case to the District of Connecticut would likely result in delay. While docket considerations are a "minor consideration," Trace-Wilco, Inc., 2009 WL 455432, at *4, "speed generally is considered a good thing in federal courts." Wins Equip., LLC v. Rayco Mfg., Inc., 668 F. Supp. 2d 1148, 1156 (W.D. Wis. 2009). This is especially true in the patent context:

> [A] patent usually . . . is a wasting asset; every year waiting to enforce the right in court is a year that a patentee does not have exclusivity in the market. For plaintiffs only interested in damages, delay is somewhat less of a problem, because the damages will ultimately compensate for the defendant's use during the court proceeding and the courts routinely award prejudgment interest. Nonetheless, time spent waiting for a court resolution is time that cannot be spent using the proceeds of the first suit to sue others. Further, while plaintiffs wait for a court resolution, defendants can design around the patentee's invention, and delay may also bring market changes that render the patented invention less valuable.

Mark A. Lemley, Where to File Your Patent Case, 38 AIPLA Q.J. 401, 403 (2010) (internal citations omitted). In this light, it is clear that the interests of justice would not be served by delaying resolution of the instant dispute.

\*\*\*

Upon review, the majority of factors analyzed by this Court are neutral with respect to whether transfer is justified. Of the remaining factors, only one—the convenience of the witnesses—weighs in favor of transfer, while three—the convenience of the parties, the weight accorded to the plaintiff's choice of forum, and trial efficiency and the interests of justice—weigh against transferring the action. Deciding whether to transfer a case involves more than just tallying factors. This Court, however, finds that the sole factor in favor of transfer does not outweigh the numerous factors that counsel against transfer. As a result, transfer to the District of Connecticut is inappropriate.

C. The Forum-Selection Clause

The parties exert considerable effort disputing the implications of a forum-selection clause contained within the confidentiality agreement between Microspherix and World Wide. Microspherix argues that the clause forces Biocompatibles—as the acquirer of World Wide—to litigate the instant matter in the Southern District of Florida, while Biocompatibles asserts that it is not bound by an agreement it was not a party to. While not dispositive, the presence of a valid forum-selection clause is "a significant factor that figures centrally in the district court's calculus" regarding whether transfer is appropriate. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); see also In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). As this Court has already determined that transfer to the District of Connecticut is inappropriate even absent the existence of a valid forum-selection clause, this Court declines to decide at this time what effect, if any, the agreement between Microspherix and World Wide has in the instant action between Microspherix and Biocompatibles.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Defendant's Motion to Transfer Venue (ECF No. 33) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 24th day of January, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record